

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2007

# Ozlek v. Postmaster Gen

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2161

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ozlek v. Postmaster Gen" (2007). *2007 Decisions.* Paper 41.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/41

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2161

———


MICHAEL OZLEK,

*Appellant*

v.

JOHN E. POTTER, POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,
EASTERN AREA, AGENCY


———


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 05-cv-0257)
District Court Judge: Honorable R. Barclay Surrick

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 13, 2007

Before: RENDELL, GREENBERG, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 19, 2007)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Michael Ozlek brought claims against the Postmaster General of the United States Postal Service under both the Rehabilitation Act of 1973 and the Family and Medical Leave Act. The District Court granted the defendant's Motion for Judgment as a Matter of Law on all claims pursuant to Federal Rule of Civil Procedure 50(b). For the reasons set forth below, we will affirm the decision of the District Court.

I.

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis.

Appellant Michael Ozlek was a Part-Time Flexible ("PTF") Letter Carrier for the United States Postal Service. After a number of transfers around the Philadelphia area, Ozlek was assigned to the West Park Post Office ("West Park"). At West Park, Ozlek was supervised by Joseph Stewart, who was replaced for a brief period of time by Louetta Curry. Ozlek's immediate supervisors were Marquita Rucker and Danielle Candelaria. This entire supervisory team reported to James Vance.

Prior to Ozlek's arrival in West Park, he had begun to experience psychological problems including depression, anxiety disorder, and obsessive-compulsive disorder. However, prior to his transfer to West Park, these symptoms did not affect the performance of his job, which had always been good. *App.* at A657.

Ozlek reported for duty at West Park on January 26, 2002. On January 30, 2002,

1

Ozlek received a letter of warning from Mr. Stewart for failure to properly scan bar codes during his mail route. In addition to this warning letter, Ozlek received other warnings and discipline throughout his tenure at West Park for various mistakes Ozlek made while delivering mail. Ozlek testified that during the meetings to discuss these various infractions, Ozlek's supervisors would holler at him and treat him unfairly. *App.* at A56.

In February 2002, Ozlek requested and received Family and Medical Leave Act ("FMLA") leave for personal illness. Over the course of the next 10 months of his employment at West Park, Ozlek requested and received FMLA leave every month, often for multiple days in a given month. The majority of this leave was based upon Ozlek's psychological problems. Ozlek exhausted all of his FMLA leave on August 6, 2002, and all of his subsequent time off was approved leave without pay or penalty.

The stress Ozlek experienced due to his issues with the management team at West Park caused him to be overwhelmed, and he requested a transfer out of West Park. Ozlek requested a transfer first from his direct supervisors, *App.* at A693, who told Ozlek that only the Postmaster of the Philadelphia District, James Gallagher, had the authority to effectuate a transfer. Ozlek wrote at least one letter to Gallagher, but his transfer request was denied. *App.* at 697. Ozlek also sent additional letters to Senators and Congressmen seeking assistance in his quest for a transfer, and he continued to request the transfer from his direct supervisors. Ozlek's stated reasons for transfer in all of these requests were a number of personal hardships, including his mental illness, his daughter's learning

2

disability, and his wife's heart problems.

During Ozlek's tenure at West Park, Louetta Curry became concerned about Ozlek's reactions to unfavorable feedback and his long absences from work. Curry requested that Ozlek undergo a Fitness for Duty examination on April 29, 2002, and the examining doctor determined that Ozlek was fit for duty and able to continue working at West Park. *App.* at A723. However, she also recommended a temporary transfer to help Ozlek deal with his emotional problems. Ozlek continued to request a transfer. Throughout the trial, Ozlek maintained that the only accommodation he sought was to be reassigned to a station outside of Vance's management team, maintaining that he could handle the stress of the job but for the management team at West Park. *App*. at A85, A100, A106, A135.

In November 2002, after being consistently denied transfer, Ozlek applied for Disability Retirement. On December 17, 2002, Joseph Stewart told Ozlek he should not return to work until his status was determined, declaring him "non-scheduled indefinitely." In March 2003, Ozlek's Disability Retirement application was approved, effective December 17, 2002. Ozlek's psychologist, Dr. McGalliard, indicated that Ozlek was totally unable to work at that time, and that his condition makes it impossible for him to work at all, even through the trial date.

Ozlek filed suit on January 19, 2005, asserting that the Post Office had violated the Rehabilitation Act and the Family and Medical Leave Act ("FMLA"). Trial commenced

3

on February 6, 2006. At the close of evidence, the District Court granted the Post Office's Motion for Judgment as a Matter of Law. This appeal followed.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the District Court's grant of judgmeɴt as a matter of law under Fed. R. Civ. P. 50(b) is plenary. *Raiczyk v. Ocean County Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir. 2004). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1156 (3d Cir. 1993).

## III.

In this appeal, appellant Ozlek claims that he presented sufficient evidence to survive a Motion for Judgment as a Matter of Law on three claims. First, he claims that he presented sufficient evidence to prove a discrimination claim under the Rehabilitation Act. Second, he claims that he presented sufficient evidence to prove a retaliation claim under the Rehabilitation Act. Finally, Ozlek claims that he presented sufficient evidence to prove a retaliation or discrimination claim under the Family and Medical Leave Act.

### A. Ozlek's Discrimination Claim Under the Rehabilitation Act

Mr. Ozlek claims that he was discriminated against due to his disability in

4

violation of the Rehabilitation Act. 29 U.S.C. § 701 *et seq*.

In order to raise claims for relief under the Rehabilitation Act, the plaintiff must first present a prima facie case of discrimination "by demonstrating: (1) he is a disabled person within the meaning of the ADA[1]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accomodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998); 29 U.S.C. § 794.

Although the District Court based its decision to grant appellee's motion for judgment as a matter of law on finding that Ozlek was neither "disabled" (1st prong) nor "qualified" (2nd prong), this Court will confine its analysis to whether Ozlek was "qualified." Since this Court agrees with the District Court finding that Ozlek was not "qualified," his discrimination claim under the Rehabilitation Act fails and it is unnecessary to address whether he is "disabled."

"[T]he burden is on the employee to prove that he is 'an otherwise qualified' individual." *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996).

A two-part test is used to determine whether someone is a qualified individual with a disability. First, a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the

---

[1] In this opinion, we refer to case law that discusses standards under both the Rehabilitation Act and the Americans with Disabilities Act interchangeably, in accordance with the statutory text of the Rehabilitation Act. 29 U.S.C. § 794(d).

appropriate educational background, employment experience, skills, licenses, etc.  Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.

*Gaul*, 134 F.3d at 580 (internal quotations and citations omitted).

Because neither party seems to be contesting that Ozlek possessed the necessary prerequisites for his employment, we consider only whether Ozlek has presented a sufficient evidentiary basis for a reasonable jury to find for him on the issue of his ability to perform the essential functions of his job with reasonable accommodation.  We decide that Ozlek has failed to present such evidence.

The District Court was correct in stating that "[t]he Third Circuit has stated that the Rehabilitation Act does not require employers to accommodate employees by transfer to another supervisor." *App.* at A11 (citing *Gaul*, 134 F.3d at 581).  The facts in *Gaul* are essentially indistinguishable from the case on appeal,[2] and this Court concludes that the holding in *Gaul* is dispositive of this issue.

In *Gaul*, the plaintiff suffered from depression and anxiety-related disorders. *Gaul*, 134 F.3d at 577.  Gaul's proposed accommodation, like Ozlek's, was a transfer to a

---

[2] Ozlek attempts to distinguish *Gaul* on the grounds that unlike the appellant in *Gaul*, Ozlek is requesting a transfer for other reasons, in addition to his desire to get away from his supervisors. *Appellant's Brief* at 46.  However, we do not feel this slight difference in requests has any effect on the reasonableness of the accommodation sought, particularly when Ozlek testified, in response to the denial of his first request for transfer, "I would have taken any transfer, as long as it was . . . away from the supervisors and managers that I had been working for." *App.* at A85.  It is clear from the record that Ozlek was only seeking a transfer to a post office outside of Vance's management team.

different location in order to get away from a co-worker. *Id.* at 578. The *Gaul* Court held that "Gaul's request to be transferred away from individuals causing him prolonged and inordinate stress was unreasonable as a matter of law . . . ." *Id.* at 579. The *Gaul* Court reasoned that "nothing in the law leads us to conclude that in enacting the [Rehabilitation Act], Congress intended to interfere with personnel decisions within an organizational hierarchy." *Id.* at 581.

Like the plaintiff in *Gaul*, Ozlek's only proposed accommodation was a transfer to a location that was outside of the supervision and control of the West Park management team. *App.* at A85, A100, A106, A135. According to *Gaul*, this accommodation was "unreasonable as a matter of matter of law." Therefore, Ozlek failed to meet his burden in pleading a prima facie case under the Rehabilitation Act. Accordingly, the District Court properly granted the appellee's motion for judgment as a matter of law.[3]

Ozlek seeks to nonetheless gain relief by claiming that the appellee violated the Act by failing to engage in the "interactive process" of finding a reasonable accommodation. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999). However, this argument ignores the fact that in order to file such a claim under the

---

[3] Both the appellant and the appellee seem to argue in their briefs over the issue of whether Ozlek was a "qualified individual" under the Rehabilitation Act before December 17, 2002, as a separate inquiry from whether he was a "qualified individual" after that date. Based on our determination that the only accommodation sought by Ozlek both before and after this date was unreasonable as a matter of law, this distinction is unnecessary.

Rehabilitation Act, the claimant must first be "qualified."

As this Court stated in *Mengine v. Runyon,* "[w]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant . . . . The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made." 114 F.3d 415, 420 (3d Cir. 1997) (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997)).

In fact, both cases cited by Ozlek list as one of the elements for a failure to communicate claim that "[the plaintiff] could have reasonably been accommodated." *Armstrong v. Burdette Tomlin Memorial Hospital*, 438 F.3d 240, 246 (3d Cir. 2006) (citing *Taylor*, 184 F.3d at 317-20). The Court in *Taylor* even distinguished *Gaul*, stating that in *Gaul* the "employee's proposed accommodation . . . was unreasonable as a matter of law." *Taylor*, 184 F.3d at 316 n.7. Therefore, because Ozlek's only proposed accommodation was unreasonable as a matter of law, *Gaul*, 134 F.3d at 581, Ozlek's failure to accommodate claim based on a lack of "interactive process" fails.

### B. Ozlek's Retaliation Claim Under the Rehabilitation Act

Ozlek also appeals the fact that the District Court failed to consider his claim that the USPS violated the Rehabilitation Act by constructively terminating him in retaliation for his requested accommodation under the Rehabilitation Act and for filing an EEO complaint. *App.* at A53. Although Ozlek's brief does not make it clear exactly what

conduct led to the constructive termination, we will assume arguendo that the supervisor's decision to declare Ozlek "non-scheduled indefinitely" is the adverse employment action that is the focus of Ozlek's retaliation claim. Although the District Court failed to specifically address this claim, we determine that this claim is without merit. At the outset, it should be noted that Ozlek's failure to establish that he was "qualified" does not prevent him from being able to recover under a retaliation claim. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 498 (3d Cir. 1997).

> *Krouse* laid out the framework for analyzing retaliation claims as follows:
>
> To establish a prima facie case of retaliation under the [Rehabilitation Act], a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action . . . . If an employee establishes a prima facie case . . . the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action . . . . If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.

*Krouse*, 126 F.3d at 500-501 (internal citations and quotations omitted). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973) (describing framework).

Even assuming that Ozlek presented sufficient evidence to establish a prima facie case of retaliation,[4] Ozlek's retaliation claim fails because he failed to provide any

---

[4] We express doubt as to whether Ozlek presented sufficient evidence to prove the required causal link between his protected activities and the alleged adverse employment

9

evidence to rebut the USPS's legitimate, non-retaliatory reason for declaring Ozlek "non-scheduled indefinitely."

Joseph Stewart, Ozlek's supervisor, testified that the real reason for declaring Ozlek "non-scheduled indefinitely" was not due to discriminatory animus, but rather was due to the fact that USPS needed to resolve inconsistencies related to Ozlek's medical status and due to inappropriate behavior by Ozlek. *App.* at A550. This testimony is sufficient to carry the employer's burden under this scheme. *See Krouse*, 126 F.3d at 500 (stating that defendant simply must "articulate[] any legitimate reason").

Ozlek, however, failed to rebut this articulated reason because the record is devoid of any evidence that would raise a genuine issue of fact as to whether Stewart's proffered reason was pretextual. *See id.* at 504 (stating that plaintiff must generally demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence") (internal quotations and citations omitted). Because Ozlek failed to carry this burden, his retaliation claim under the Rehabilitation Act is without merit.

---

action. We have held that timing that is "unusually suggestive" of retaliatory motive may establish the necessary causal connection, or that, in the absence of such temporal proximity, other evidence of retaliatory animus during the intervening period may suffice. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). Although we believe Ozlek presented insufficient evidence to prove a causal link, his claim fails for other reasons, and thus we will not explore this issue further.

10

*C. Ozlek's Claim Under the Family and Medical Leave Act*

Mr. Ozlek claims that he was discriminated and retaliated against due to the exercise of his rights under the Family and Medical Leave Act ("FMLA"). 29 U.S.C. § 2611 *et. seq.* For the following reasons, we affirm the District Court's granting of the motion for judgment as a matter of law dismissing these claims.

To establish a prima facie case of discrimination or retaliation based on FMLA use, the plaintiff must show that "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse employment decision was causally related to his leave." *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004); 29 U.S.C. § 2615(a)(2).

In this appeal, Ozlek identifies two adverse employment decisions/actions. First, he claims that Mr. Stewart's decision to declare him "non-scheduled indefinitely" was a retaliation due to Ozlek's use of FMLA leave. However, this claim fails for the same reasons that Ozlek's retaliation claim against Mr. Stewart failed under the Rehabilitation Act.[5]

Second, Ozlek claims that he was discriminated against and harassed by his supervisors due to his frequent requests for FMLA leave. This claim fails, however,

---

[5] Claims under FMLA are analyzed using the same burden-shifting scheme as is used for ADA and other retaliation/discrimination claims. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998) ("*McDonnell Douglas* burden-shifting framework applies to claims that an employee was discriminated against for availing himself of FMLA-protected rights").

11

because Ozlek did not present sufficient evidence on the issue of causation.

In his brief, Ozlek stated that he had "testified how his supervisors would scream and yell at him, call him a 'liar' and give him jobs that could not be done in the time allowed." *Appellant's Brief* at 56. However, Ozlek was unable to remember the date of this treatment, *App.* at A56, and the record strongly suggests that this complained-of behavior by his supervisors (or at least a large part of it) happened prior to Ozlek even inquiring about FMLA leave on February 6, 2002. In addition, Ozlek attempted to prove causation at trial by pointing to a statement made by his supervisor Louetta Curry at her deposition. Curry stated that her superior's evaluation of her was based at least partly on the amount of sick leave taken by the subordinates under her supervision, including Ozlek. However, given a complete lack of other evidence that would tend to prove causation, we agree with the District Court that this statement by itself is not sufficient to prove causation. Therefore, Ozlek failed to make out a prima facie case of retaliation or discrimination under the FMLA.

## IV.

We have considered all other arguments made by the parties on the appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the District Court's decision to grant the defendant's motion for judgment as a matter of law.

12